# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 17-cv-60365-BLOOM/Valle

RONALD CAPPS

      Plaintiff,

v.

FLORIDA HIGHWAY PATROL,

      Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Florida Highway Patrol's ("Defendant" or "FHP") Motion to Dismiss Complaint, ECF No. [12] ("Motion to Dismiss"), and Plaintiff Ronald Capps' ("Plaintiff") Motion to Sever and Remand Counts II, III & IV, ECF No. [16] ("Motion to Sever and Remand"). The Court has reviewed the Motions, all opposing and supporting submissions, the record and the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion to Dismiss is granted in part, and Plaintiff's Motion to Sever and Remand is denied.

## I.    BACKGROUND

Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD") following his service with the United States Army from 2005 through 2011. ECF No. [1-2] at ¶¶ 9-10. Plaintiff received a disability rating by the Department of Veteran Affairs ("VA") for his PTSD. *Id.* at ¶ 10.

On or around February 6, 2016, Plaintiff—while employed as a detention technician with the Broward Sheriff's Office ("BSO")—submitted an employment application with FHP for a trooper position. *Id.* at ¶¶ 12-13. On or about March 29, 2016, Plaintiff met with Trooper Elliott

Rosen ("Trooper Rosen"), who was assigned to conduct a background investigation of Plaintiff for consideration of Plaintiff's potential employment with FHP. *Id.* at ¶ 14. During that meeting, "Plaintiff became uneasy and visibly upset at the manner in which Trooper Rosen went about conducting the interview and speaking to Plaintiff in an insulting manner[,] . . . [and] [a]s a result . . ., Plaintiff advised Trooper Rosen that maybe he should withdraw his application from the selection process." *Id.* at ¶¶ 15-16. The following day, Plaintiff sent Trooper Rosen an email "indicating that he had taken care of requesting his official college transcripts which [he] had not taken with him to the interview." *Id.* at ¶ 17. Trooper Rosen responded via email the same day, "inform[ing] [Plaintiff] that he had sent [Plaintiff's] file back to Tallahassee to be placed in an inactive status based upon Plaintiff's request to withdraw from the process." *Id.* at ¶ 18.

On March 31, 2016, Plaintiff contacted Trooper Rosen's supervisor, Captain George Crotta ("Captain Crotta"), to complain about Trooper Rosen's behavior during the interview and to "inquire about the status of his application." *Id.* at ¶ 19. Captain Crotta informed Plaintiff that his application was placed on an inactive status "due to the allegations Plaintiff had made against Trooper Rosen." *Id.* at 20.

Although Plaintiff had been informed that his application had been placed on an inactive status, FHP, "[u]nbeknownst to Plaintiff," continued its background investigation of Plaintiff. *Id.* at ¶ 21. During the course of that investigation, Trooper Rosen contacted BSO and inquired about a pending claim with the Equal Employment Opportunity Commission ("EEOC") that Plaintiff had filed against BSO. *Id.* at ¶ 22. Trooper Rosen also contacted officials at the VA "to inquire about confidential matters pertaining to Plaintiff's prior medical and/or psychological treatment at the VA" and, as a result, elicited and received confidential information relating to "an incident that occurred while Plaintiff was treating at the VA." *Id.* at ¶¶ 25-26. According to

the Complaint, the information received by Trooper Rosen from BSO and the VA was "disseminated among [FHP] in order to render Plaintiff unsuitable for employment with [FHP]." *Id.* at ¶¶ 24, 27. At no time during the course of Plaintiff's background investigation did FHP provide Plaintiff with a conditional offer of employment. *Id.* at ¶ 28. Plaintiff claims that he was not hired by FHP "as a result of the unfavorable information obtained by [FHP] about his medical and/or psychological impairment/disability and the EEOC claim he filed against BSO." *Id.* at ¶ 29.

Based on these allegations, on January 5, 2017, Plaintiff brought this action against Defendant in Broward County Circuit Court. Plaintiff's Complaint asserts the following claims: violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(d)(2) (Count I); violations of the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01, *et seq.* (Counts II and III); and invasion of privacy under article I, section 23 of the Florida Constitution (Count IV). *See id.* On February 17, 2017, Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441. *See* ECF No. [1].

Defendant filed its Motion to Dismiss, ECF No. [12], on March 10, 2017, claiming that each of the counts asserted in the Complaint fails to state a claim. Plaintiff filed his Motion to Sever and Remand on March 20, 2017, ECF No. [16], and contends that the Court lacks supplemental jurisdiction over Counts II, III, and IV because those counts, which allege violations of state law, arise from a set of facts distinct from the federal ADA violation alleged in Count I. As such, Plaintiff argues that the Court must sever and remand back to state court Counts II, III, and IV pursuant to 28 U.S.C. § 1441(c). *Id.* The Court will first address Plaintiff's Motion to Sever and Remand to determine whether it has jurisdiction over Counts II, III, and IV, and will then turn to Defendant's Motion to Dismiss.

## II.   DISCUSSION

### A.  Plaintiff's Motion to Sever and Remand

"Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).   In removal actions, the removing party bears the burden of establishing jurisdiction.   *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).   Any jurisdictional uncertainties are resolved in favor of remand.   *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

Federal law authorizes defendants to remove a state court action to a federal court if the action includes a federal question claim even if the state law claims are not subject to removal based on supplemental jurisdiction.  *See* 28 U.S.C. § 1441(c).  However, if the federal court finds that it cannot exercise supplemental jurisdiction over claims that were removed with a federal claim, then it must sever the non-federal claim and "remand the severed claims to the State Court from which the action was removed."  *Id.* § 1441(c)(2).

District courts have the power to exercise supplemental jurisdiction over all state law claims that are so related to claims that are within the Court's original jurisdiction that they form part of the same "case or controversy" under Article III of the United States Constitution.  28 U.S.C. § 1367(a).  This "case or controversy" standard confers supplemental jurisdiction over all state claims which arise out of a "common nucleus of operative fact with a substantial federal claim."  *Lucero v. Trosch*, 121 F.3d 591 (11th Cir. 1997).  The test for exercising supplemental jurisdiction "is whether the claims asserted 'derive from a common nucleus of operative fact.' We take the nucleus of facts on which the federal question claims are based and compare it to the nucleus of facts on which the state law claims are based."  *Upper Chattahoochee Riverkeeper*

*Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 679 (11th Cir. 2012) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)); *see also Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996) ("In deciding whether a state law claim is part of the same case or controversy as a federal issue, we look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence.").

The entirety of Plaintiff's argument in support of severance and remand is as follows:

When examined in detail, the facts alleged in Count [sic] II – IV do not form a common nucleus of fact with those alleged in Count I. Indeed, the facts alleged in Count I are based solely on an ADA violation and have absolutely no relation to the EEOC proceedings which make up the improper conduct asserted in Counts II and III nor the improper dissemination of private facts of the Plaintiff alleged in Count IV. Accordingly, the Court lacks supplemental jurisdiction over Counts II, III and IV and therefore must sever and remand it [sic] to state court.

ECF No. [16] at ¶ 15. The Court disagrees.

The specific ADA violation asserted in Count I is that Defendant improperly inquired into Plaintiff's medical disability with the VA before ever making an offer of employment to Plaintiff. *See* ECF No. [1-2] at ¶¶ 34-36. Importantly, the nucleus of fact out of which Count I arises is not limited solely to Defendant's alleged inquiry with the VA. Specifically, Trooper Rosen's inquiry with the VA was in relation to the employment application Plaintiff submitted to Defendant. As reflected in the Complaint, that application proved unsuccessful, as Plaintiff ultimately did not receive an offer of employment from Defendant—which Count I characterizes in part as a deprivation of "terms and conditions of employment." *Id.* at ¶ 37.[1] Thus, the nucleus of fact underpinning Count I necessarily includes Plaintiff's application with Defendant and Defendant's decision not to hire Plaintiff.

Inescapably, Plaintiff's application with Defendant and Defendant's decision not to hire Plaintiff are also central to the FCRA violations asserted in Counts II and III. Specifically,

---

[1] Hence, Count I's request for, among other things, lost wages. *See id.* at ¶ 37(b).

Count II alleges that the information relating to Plaintiff's EEOC complaint that Defendant obtained from BSO "negatively affected Plaintiff's job prospects with [FHP]. *Id.* at ¶ 42. Count III also references Plaintiff's EEOC complaint and alleges that Plaintiff was not hired by Defendant because of "his handicap"—namely, his PTSD. *Id.* at ¶¶ 49-50. Common to Counts I, II, and III, then, are Defendant's decision not to hire Plaintiff—particularly the manner in which Defendant came to that decision. Plaintiff argues that the ADA violation in Count I—i.e., the inquiry which led to Defendant's discovery of Plaintiff's medical disability—has "absolutely no relation to" the conduct relating to the EEOC claim alleged in Counts II and III.[2] However, the following allegation made in the Complaint (and incorporated by all three counts) says otherwise: "Plaintiff was not hired by [FHP] as a result of the unfavorable information obtained by [FHP] about his medical and/or psychological impairment/disability *and* the EEOC claim he filed against BSO." *Id.* at ¶ 29 (emphasis added); *see also id.* at ¶¶ 24, 27 (alleging that the information received by Trooper Rosen from BSO regarding Plaintiff's EEOC claim and from the VA was "disseminated among [FHP] in order to render Plaintiff unsuitable for employment with [FHP]"). In other words, Defendant's conduct relating to Plaintiff's medical disability and Defendant's conduct relating to Plaintiff's EEOC claim are related in the sense that they both appeared to play significant, if not equal, roles in Defendant's decision not to hire Plaintiff.

Finally, with respect to Count IV, which alleges that Defendant obtained and disseminated amongst its staff "private facts concerning Plaintiff's prior medical and/or psychological treatment received while at the VA[,]" *id.* at ¶¶ 55-56, the shared nucleus of operative fact with Count I is even more apparent. Count IV's allegation that Defendant obtained private information concerning Plaintiff's medical disability is essentially one and the

---

[2] To be sure, the only conduct alleged in Count III is Defendant's refusal to hire Plaintiff based on Plaintiff's medical disability. *See id.* at ¶¶ 49-50.

same with Count I's allegation that Defendant improperly inquired into Plaintiff's medical disability with the VA.  *Compare id.* at ¶¶ 55-56, *with id.* at ¶¶ 34-36.

For these reasons, the Court finds that Plaintiff's state law claims under Counts II, III, and IV all arise out of a common nucleus of operative fact with Plaintiff's federal claim under Count I—thereby rendering the claims part of the same case or controversy for purposes of Article III.  The Court will therefore exercise its supplemental jurisdiction over Plaintiff's state law claims.[3]  *See* 28 U.S.C. § 1367(a).  Accordingly, Plaintiff's Motion to Sever and Remand is denied.

### B.  Defendant's Motion to Dismiss

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, (2002).  While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Nor can a complaint rest on "'naked

---

[3] Even if a court has supplemental jurisdiction over a claim, it can decide not to exercise its jurisdiction if any of the following factors are present:

    (1) the claim raises a novel or complex issue of State law,
    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
    (3) the district court has dismissed all claims over which it has original jurisdiction, or
    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  None of the above mentioned factors are present here.

assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678.  A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).  While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v.*

*Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### 1. ADA Claim (Count I)

The ADA makes it illegal for a "covered entity" to "discriminate against a qualified individual with a disability." 42 U.S.C. § 12112(a). "The Act also restricts an employer's ability to make medical examinations or inquiries that relate to an applicant's disability status. *See* § 12112(d). Subsection 12112(d)(1) states the general bar against using medical examinations or inquiries to discriminate." *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1212 (11th Cir. 2010). Further guidance pertaining to three distinct phases of the application process is provided under subsections 12112(d)(2) through 12112(d)(4), with subsection 12112(d)(2) covering the "pre-offer" stage—which is at issue in Count I. *See Harrison*, 593 F.3d at 1212. During the pre-offer stage, "a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A). An employer may only inquire into the "ability of an applicant to perform job-related functions." *Id.* § 12112(d)(2)(B); *see also* 29 C.F.R. § 1630.14(a) (providing that an employer may make "pre-employment inquiries into the ability of an applicant to perform job-related functions, and/or may ask an applicant to describe or to demonstrate how, with or without reasonable accommodation, the applicant will be able to perform job-related functions").

Defendant's argument for dismissal of Plaintiff's medical inquiry claim under the ADA appears to take issue with Plaintiff's status as a "job applicant" under 42 U.S.C. § 12112(d)(2)(A). Specifically, Defendant asserts that the Complaint establishes that Plaintiff was never processed for a position with Defendant, as his application was placed in an "inactive

status" upon Plaintiff's request to withdraw from the application process. ECF No. [12] at 4-5. Defendant argues that, at best, the Complaint merely alleges that Trooper Rosen obtained confidential information from the VA that was "unrelated to any pending employment application or process with [FHP]." *Id.* at 5. The Court is not convinced by this argument.

According to Defendant, the "only inference" that can be drawn from the Complaint is that "there was an inactive file, consented to by the Plaintiff, where the Plaintiff wanted no part with the trooper and [FHP]; not that [Plaintiff] was knowingly submitting and actually part of an application process." ECF No. [21] at 2. Contrary to Defendant's position, however, the Complaint does not allege or even reflect that "Plaintiff did indeed withdraw his application." *Id.* While the Complaint alleges that Plaintiff was *advised* by Trooper Rosen via email that his application was placed in an inactive status based upon his request to withdraw the application, ECF No. [1-2] at ¶ 18, the Complaint does not actually allege that Plaintiff himself ever requested that his application be withdrawn. The distinction is significant, especially in light of other allegations asserted in the Complaint. For example, the Complaint alleges the following: that "Plaintiff submitted his application for employment with [FHP] for a trooper position"; that "Trooper Rosen was assigned the task of completing Plaintiff's background investigation for consideration of Plaintiff's employment with [FHP]"; that Plaintiff contacted Trooper Rosen's supervisor the day after his email correspondence with Trooper Rosen in order to "inquire about the status of his application"; that Trooper Rosen's supervisor informed Plaintiff that his application was placed in an inactive status "due to the allegations Plaintiff made against Trooper Rosen"—contrary to what Trooper Rosen had advised Plaintiff; and that "Plaintiff was not hired by [FHP] as a result of the unfavorable information obtained by [FHP] about his medical and/or psychological impairment/disability and the EEOC claim he filed against BSO." *Id.* at ¶¶ 13-14,

19-20, 29. Through these allegations, among others, the Complaint makes clear that Plaintiff submitted an application for a position with FHP and that he was not hired on account of unfavorable information—not Plaintiff's withdrawal of his application. Evaluating all plausible inferences derived from the Complaint's allegations in favor of Plaintiff, as the Court must, the Court finds that Plaintiff has sufficiently pled his improper medial inquiry claim under the ADA.[4]

### 2. FCRA Claims (Counts II and III)

#### a. FCRA Retaliation (Count II)

Count II of the Complaint alleges a violation of "FCRA's Retaliation provision." That provision, found at Fla. Stat. § 760.10(7), provides in relevant part as follows:

> It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

To prevail on an FCRA retaliation claim, a plaintiff must demonstrate that "(1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244, 1244 n. 4 (11th Cir. 2010). Protected activity includes opposing

---

[4] To the extent that Defendant implies that a medical inquiry claim under 42 U.S.C. § 12112(d)(2) must explicitly state that the underlying job application was pending at the time of the improper medical inquiry, Defendant offers no authority in support of that proposition, and the Court finds no occasion to read such a requirement into the statute. It is enough here that the Complaint alleges that Plaintiff was indeed a job applicant and that the improper medical inquiry was made in relation to Plaintiff's application—irrespective of any consideration as to the application's pendency (or lack thereof)—before an offer of employment was ever made. *See, e.g.*, *Harrison*, 593 F.3d at 1211 (declining to restrict private rights of action under 42 U.S.C. § 12112(d)(2) to only individuals with disabilities, observing that "§ 12112(d)(2) sets forth a specific bar against medical examinations and inquires with respect to *any* applicant who has not yet received a job offer") (emphasis in original).

unlawful employment practices or participating in any inquiry regarding an unlawful employment practice, including filing an EEOC charge. *Id.*

Defendant first argues that Count II fails to meet the pleading requirements under *Twombly* because it is unclear as to which of Defendant's alleged acts it is based upon. *See* ECF No. [12] at 5. This argument is without merit. To begin with, Defendant does not articulate how this purported lack of clarity precludes Plaintiff from sufficiently stating the three elements of an FCRA retaliation claim identified above—namely, a protected activity, an adverse action, and a causal connection between the two. Regardless, there is no real confusion as to which of Defendant's alleged acts Count II is based upon because Count II only identifies one act. Specifically, Count II alleges that Trooper Rosen "improperly obtained information concerning Plaintiff's EEOC complaint against BSO for purposes of rendering Plaintiff unsuitable for employment with [FHP]." ECF No. [1-2] at ¶ 40. Count II makes quite clear that the alleged obtainment of information forms the basis of the claim asserted thereunder. *See id.* at ¶ 43 ("Defendant's . . . *obtaining such information* about the Plaintiff concerning his participation in a protected activity *is a violation* of the FCRA's Retaliation provision.") (emphasis added). That the obtained information negatively affected Plaintiff's employment prospects—as Count II alleges and Defendant emphasizes—in no way muddles what the conduct at issue is, as Defendant suggests it does. As such, the Court finds that Defendant has been provided fair notice of the grounds upon which Count II rests. *See Swierkiewicz*, 534 U.S. at 512.

In the alternative, Defendant asserts, as it does with respect to Plaintiff's ADA claim, that "Plaintiff alleges throughout the Complaint that he requested his application for employment to be withdrawn from consideration and that his application for employment was placed into inactive status." ECF No. [12] at 6. Because of those allegations, Defendant argues, Plaintiff

cannot establish a concrete adverse employment action causally related to any protected activity Plaintiff engaged in. *Id.* As previously discussed, however, the Complaint does not allege that Plaintiff ever requested that his application be withdrawn, nor does the Complaint allege that the reason Defendant did not hire Plaintiff was because Plaintiff withdrew his application. Instead, the Complaint alleges that "Plaintiff was not hired by [FHP] as a result of the unfavorable information obtained by [FHP] about his medical and/or psychological impairment/disability and the EEOC claim he filed against BSO." ECF No. [1-2] at ¶ 29. In addition, and especially pertinent to Plaintiff's FCRA's retaliation claim, Count II specifically alleges that the information obtained by Defendant regarding Plaintiff's EEOC complaint against BSO was "for purposes of rendering Plaintiff unsuitable for employment with [FHP]" and "negatively affected Plaintiff's job prospects with [FHP]." *Id.* at ¶¶ 40, 42. These allegations adequately plead protected activity, an adverse employment action, and a causal connection between the protected activity and the adverse employment action for purposes of Fla. Stat. § 760.10(7). *See Howard*, 605 F.3d at 1244, 1244 n. 4.

Accordingly, the Court declines to dismiss Plaintiff's FCRA retaliation claim on the bases that the allegations under Count II are vague and confusing or otherwise fail to state a claim.

### b. FCRA Discrimination (Count III)

Count III of the Complaint asserts a claim of discrimination under the FCRA. Pursuant to Fla. Stat. § 760.10(1)(a), it is an "unlawful employment practice for an employer . . . to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . handicap . . . ." To establish a *prima facie* case of FCRA discrimination, a plaintiff must show

that "(1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination as the result of his disability." *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996); *see also Dulaney v. Miami-Dade Cty.*, 481 Fed. Appx. 486, 489 n.2 (11th Cir. 2012) ("Claims of disability discrimination under the FCRA are analyzed using the same framework as ADA claims").

Count III alleges that Defendant "perceived Plaintiff to be handicapped due to his military combat service and the treatment he received for PTSD" and "[f]ailed or refused to hire the Plaintiff because of his handicap[.]" ECF No. [1-2] at ¶¶ 49-50(a). In arguing that Count III lacks the requisite specificity required to maintain a cause of action for discrimination under the FCRA, Defendant again relies on the inaccurate assertion that Plaintiff's "application for employment was placed into inactive status based upon his own request to withdraw from the process." ECF No. [12] at 7. The Court therefore declines to dismiss Count III on this basis, and otherwise finds that Count III sufficiently states an FCRA discrimination claim.[5]

### 3. Invasion of Privacy Claim (Count IV)

Count IV of the Complaint asserts an improper governmental intrusion into Plaintiff's private life in violation of article I, section 23 of the Florida Constitution, which provides as follows: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law." As relief for this claim, Plaintiff seeks compensatory damages. ECF No. [1-2] at ¶ 58.

---

[5] That said, the Court takes note of the assertion in Count IV that Defendant also violated the FCRA by "caus[ing] or attempt[ing] to cause an employer (Broward Sheriff's Office) to discriminate against Plaintiff[,]" ECF No. [1-2] at ¶ 50(c), which is not supported by any factual allegations in the Complaint. Thus, to the extent that Plaintiff's FCRA discrimination claim is based on a theory that Defendant caused or attempted to cause BSO to discriminate against Plaintiff, it is dismissed.

As Defendant argues, "under Florida law, a plaintiff cannot recover monetary damages for 'governmental intrusion' into private life arising under the Florida Constitution because article I, section 23 of the Florida Constitution 'fails to sufficiently delineate a rule by which the right to money damages can be determined, enjoyed, or protected.'" *Anderson v. City of Groveland*, 2015 WL 6704516, at *6 (M.D. Fla. Nov. 2, 2015) (quoting *Tucker v. Resha*, 634 So. 2d 756, 759 (Fla. 1st DCA 1994), *approved*, 670 So. 2d 56 (Fla. 1996)); *see also Tucker*, 634 So. 2d at 759 (holding that article I, section 23 of the Florida Constitution does not create a cause of action for "governmental intrusion" giving rise to money damages); *Smith v. Bell*, 2008 WL 868253, at *9 (S.D. Fla. Mar. 31, 2008) ("The Florida courts have generally declined to recognize damage actions for violations of the Florida Constitution itself.") (collecting cases). Accordingly, Plaintiff's invasion of privacy claim under Count IV is dismissed with prejudice.[6]

---

[6] The Court notes that Defendant is correct to argue, *see* ECF No. [12] at 8-9, that Count IV would also be subject to dismissal on the ground that it fails to allege compliance with the pre-suit notice requirements under Fla. Stat. § 768.28(6)(a). *See Debose v. Univ. of S. Florida*, 178 F. Supp. 3d 1258, 1274 (M.D. Fla. 2016) ("[W]here a plaintiff fails to allege compliance with Section 768.28(6)(a), the Court is required to dismiss the Plaintiff's claims for failure to comply with conditions precedent."). Defendant does not raise this argument with respect to any of the other counts in the Complaint. *See* ECF Nos. [12], [21]. To that extent, it is worth noting that section 768.28 waives sovereign immunity of the State or any of its agencies or subdivisions for liability for "injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment . . . ." Fla. Stat. § 768.28(1). Subsection 768.28(6)(a)'s notice requirement appears to apply solely to state-law tort claims—particularly, claims "for which immunity was waived by enactment of the statute, *to wit: common law torts*." *Schaeffer v. Sch. Bd. of Broward Cty.*, Fla., 69 F. Supp. 3d 1327, 1330 (S.D. Fla. 2014) (quoting *Bifulco v. Patient Bus. & Fin. Servs., Inc.*, 997 So. 2d 1257, 1258 (Fla. 5th DCA 2009) *approved and remanded*, 39 So. 3d 1255 (Fla. 2010)) (emphasis in original); *see also Methelus v. Sch. Bd. of Collier Cty., Florida*, 2017 WL 1037867, at *13 (M.D. Fla. Mar. 17, 2017) (finding that plaintiffs' claim under the Florida Educational Equity Act ("FEEA") was not subject to Fla. Stat. § 768.28(6)(a)'s notice requirement and observing that "Florida courts have rejected application of § 768.28(6) to remedial civil rights statutes that, like the FEEA, [] confer a private right of action and specify available forms of relief") (collecting cases).

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff Ronald Capps' Motion to Sever and Remand, **ECF No. [16]**, is **DENIED**.

2. Defendant Florida Highway Patrol's Motion to Dismiss, **ECF No. [12]**, is **GRANTED in part** and **DENIED in part**.

3. Count IV is **DISMISSED** with prejudice.

4. Defendant Florida Highway Patrol shall file an Answer to the Complaint by May 5, 2017.

**DONE AND ORDERED** in Miami, Florida, this 24th day of April, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:  Counsel of Record